# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

TIRINA JONES,

        Plaintiff,

      v.

CITY OF HAMMOND and JESSE
ESCAMILLA, JR.,

        Defendants.

No. 24 CV 10978

Judge Georgia N. Alexakis

## MEMORANDUM OPINION AND ORDER

Plaintiff Tirina Jones, a citizen of Illinois, was hit by a van being pursued by defendant Jesse Escamilla, Jr., a Hammond, Indiana, police officer. Jones sued Escamilla and the City of Hammond—among others—in Illinois court. When the state-court case against Hammond and Escamilla (collectively "defendants") was dismissed, Jones filed the instant suit in federal court.

Defendants move to dismiss [22], and for the below reasons, the Court grants their motion.

## I.    Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor (as the Court does in the section that follows), but a court need not

accept legal conclusions or "threadbare recitals" supported by "conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.    Background

On December 26, 2021, Escamilla, while on duty, learned via license plate reader that a van driving in Calumet City, Illinois, had been reported stolen. [18] ¶¶ 19, 21.[1] Escamilla did not know the identity of the driver of the stolen van. *Id.* ¶ 51. Escamilla activated his emergency lights, and the van accelerated and fled. *Id.* ¶¶ 24–25. Both vehicles proceeded at high speed—up to 111 miles per hour—and ran numerous stop signs and traffic lights during the chase. *Id.* ¶¶ 26–46. After a pursuit of more than eight miles, the van collided with the vehicle Jones was driving in Harvey, Illinois. *Id.* ¶¶ 47–48. Escamilla's vehicle did not strike Jones's vehicle.

Jones initially sued defendants—along with the van driver and the municipalities of Calumet City and Harvey—in Illinois court on October 11, 2022. *Id.* ¶ 7. The state court dismissed the case against Hammond and Escamilla with prejudice on November 8, 2024, after concluding that as an Illinois court it lacked jurisdiction over "subsidiaries of the State of Indiana" because of sovereign immunity. *Id.* ¶ 10; [27-1] at 2–3.

On October 24, 2024, Jones filed the instant suit in federal court. [1]. In her operative complaint, Jones brings federal claims under 42 U.S.C. § 1983 against both Escamilla and Hammond (Counts I, III, and IV). [18] ¶¶ 67–68, 115–19, 175–77.

---

[1] Paragraph 19 of Jones's First Amended Complaint gives a date of December 8, 2021. [18] ¶ 19. Because the rest of the complaint indicates the chase and crash happened on December 26, 2021, the Court understands this to be a scrivener's error.

Jones also brings state-law claims of negligence, recklessness, and willful and wanton conduct against both defendants (Counts II and V). *Id.* ¶¶ 111–14, 219–22. Defendants now move to dismiss. [22].

## III. Analysis

### A. Section 1983

The Court begins with the federal claims. Jones advances two theories of liability under § 1983 against Hammond and one against Escamilla. The first theory (Count I) is that Hammond violated Jones's rights under the Fourth and Fourteenth Amendments when Escamilla, its "employee and/or agent … breached his duty to [Jones] in failing to act as a reasonably careful person would when operating his vehicle … by acting negligently and in utter and deliberate indifference and/or with a conscious disregard for the safety of persons" by pursuing the van. [18] ¶ 68. Jones does not articulate how the Fourth Amendment fits into this line of thinking, though the Court infers that Jones's theory is that the crash was a Fourth Amendment seizure. But Count I fails for the simple reason that municipalities "are not vicariously liable under § 1983 for their employees' actions," *Connick v. Thompson*, 563 U.S. 51, 60 (2011), and so Hammond cannot be liable for Escamilla's acts.

Municipalities are of course responsible "for their *own* illegal acts," *id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)), and Jones's second theory of liability for Hammond (Count III) is brought under *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978). A *Monell* claim must allege that "action pursuant to municipal policy" caused the relevant injury. *Connick*, 563 U.S. at 60. The relevant municipal policy may be an express policy, an established practice "that is so

3

permanent and well settled as to constitute a custom or usage with the force of law," or a decision by "person with final policymaking authority." *Palka v. City of Chicago*, 662 F.3d 428, 434 (7th Cir. 2011) (cleaned up).

Jones does not allege any express policy, so does not state a claim under the first *Monell* prong. Rather, she alleges that Hammond police officers "engaged in a pattern and practice of disregarding speed limits, traffic laws, and/or department driving policies or procedures"; that "Hammond's policymakers, including but not limited to … Escamilla [], accepted the pattern and practice among its police officers"; and that Escamilla, "as a final policy maker," created a "custom and usage of excessive driving speed and disregard of traffic laws, amount[ing] to a policy decision." [18] ¶¶ 115–19. But Jones pleads no facts that would allow the Court to infer that Escamilla, a police officer, was a final policy maker with the necessary "authority to adopt rules for the conduct of government" in Hammond. *Rasche v. Vill. of Beecher*, 336 F.3d 588, 599 (7th Cir. 2003) (cleaned up). Nor could she, because "under Indiana law the 'police chief' is the final policymaker for a municipal police department." *Brodanex v. Town of St. John*, 22-2955, 2023 WL 7002161, at *2 (7th Cir. Oct. 24, 2023) (citing Ind. Code § 36-8-3-3(g)). Jones names no other policymakers, so has not stated a claim under the third *Monell* prong.

That leaves the second *Monell* prong: a widespread pattern or practice. Jones makes the conclusory assertion that Hammond has a "pattern and practice among its police officers of disregarding traffic safety and speed limits while operating police vehicles," [18] ¶ 117, but pleads no facts to support this other than Escamilla's

behavior on December 26, 2021. As a general matter, the Court cannot reasonably infer a widespread practice "with the force of law" from one vehicle pursuit by one officer on one day. *See, e.g.*, *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) ("[T]he gravamen [of a *Monell* claim] is not individual misconduct by police officers (that is covered elsewhere under § 1983), but a *widespread practice* that permeates a critical mass of an institutional body."); *see also Washington v. City of Chicago*, No. 24 C 12842, 2025 WL 1262569, at *4 (N.D. Ill. May 1, 2025) ("With a single incident and no surrounding context, [plaintiff's] *Monell* claim fails to cross the line from conceivable to plausible."). Count III must therefore fail as well.

The remaining claim is Jones's § 1983 claim against Escamilla (Count IV). Jones again does not articulate the role of the Fourth Amendment in Count IV, but to the extent that she contends the crash was an unconstitutional seizure, that argument is foreclosed. A car crash involving a police officer is not a "seizure" under the Fourth Amendment without contact between the police car and the plaintiff's vehicle. *See Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (no Fourth Amendment seizure where plaintiff "failed to bring forth any evidence that there was any contact between the motorcycle and Myers's police car"). A Fourth Amendment seizure also requires intentionally applied force. *See Marion v. City of Corydon, Indiana*, 559 F.3d 700, 705 (7th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007)). Since Jones does not allege that Escamilla's car made contact with hers, or that Escamilla had any intent to apply force to her vehicle, she has not alleged a Fourth Amendment seizure.

5

Jones also argues that Escamilla's behavior during the pursuit constitutes "deliberate indifference to/reckless disregard for Plaintiff's right to life and personal security by Escamilla in a situation that afforded him the time and opportunity to make unhurried judgments," in violation of Jones's rights under the Fourteenth Amendment. [28] at 4. Jones relies chiefly on *Flores v. City of South Bend*, 997 F.3d 725 (7th Cir. 2021), and *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), both involving substantive due-process claims related to fatalities during police chases.

In *Lewis*, a motorcycle passenger died after being struck by a police car during a high-speed chase. 523 U.S. at 837. The Supreme Court concluded that the police officer's decision to chase a speeding motorcycle—despite having no reason to do so other than its refusal to stop—did not "shock the conscience" and thus did not implicate the Fourteenth Amendment, even if "prudence would have repressed the [officer's] reaction" to give chase. *Id.* at 855. *Lewis* further noted that the threshold for constitutional liability was far above "customary tort liability" and that most substantive due-process claims of this nature would require "conduct *intended to injure* in some way unjustifiable by any government interest." *Lewis*, 523 U.S. 848–49 (emphasis added).

In *Flores*, however, the plaintiff did state a substantive due-process claim where a police officer "careened through residential streets and a red light at speeds up to 98 mph to reach a routine traffic stop he was not invited to aid" and as a result fatally struck the decedent's car. 997 F.3d at 728; *see also id.* at 730 ("A jury could find, based on these allegations, that [the officer] displayed criminal recklessness (or

6

deliberate indifference) to the known risk."). The key difference from *Lewis* was that "behavior considered reasonable in an emergency situation might be criminally reckless when state actors have time to appreciate the effects of their actions" because "[o]fficers responding to a nonemergency situation or inserting themselves into a situation that is already under control face a different set of constraints. They cannot reasonably expect to engage in the same conduct considered acceptable in the heat of an emergency." *Id.*

Jones argues that this case is analogous to *Flores* because the accident occurred "in a non-emergency setting." [28] at 5. Indeed, Jones contends that "[f]actually, Escamilla's conduct is worse than [the] conduct [of the officer in *Flores*] in that Escamilla is alleged to have travelled at high rates of speed, through residential area stop signs and red lights, through multiple municipalities." *See* [27] at 5. As a result, Jones argues, "the heightened *Lewis* standard requiring allegations of an intent to harm is inapplicable." [28] at 5.

The Court does not agree that Escamilla's conduct is worse than that in *Flores*. The crux of Jones's argument is that, like the officer in *Flores*, Escamilla behaved dangerously in a non-emergency situation that did not require it. But the inciting incident in *Flores* was a "routine traffic stop" by other officers that the responding officer had no reason to believe was an emergency. 997 F.3d at 728. Here, Escamilla was presented with a fleeing suspect in a van that had been reported stolen. This is much closer to the facts of the more recent appeals-court decision in *Flynn v. Consolidated City of Indianapolis & Marion County*, 23-3289, 2025 WL 2249613 (7th

7

Cir. Aug. 7, 2025). In *Flynn*, "the police chase began for even more serious reasons than a failed traffic stop: [the suspect] was in a suspected stolen truck, crashed into a patrol car, and nearly hit two officers." *Flynn*, 2025 WL 2249613, at *2. As a result, "the district court properly concluded that this was an emergency situation and applied the intent to harm standard." *Id.*

Under *Flynn*—or *Lewis* for that matter—Escamilla was in an "emergency situation": active pursuit of a fleeing suspect. Like the officer in *Flynn*, Escamilla had even more justification for the pursuit than the emergency in *Lewis*, since he had reason to believe that the driver was in a stolen vehicle. "In the emergency context of a sudden, high-speed police chase … the standard is intent to harm." *Flynn*, 2025 WL 2249613, at *2 (citing *Lewis*, 523 U.S. at 854). Jones does not allege any intent to harm, and her situation thus "do[es] not give rise to liability under the Fourteenth Amendment, redressable by an action under § 1983." *Lewis*, 523 U.S. at 854.

## B. State Law Claims

Jones also brings Illinois state-law claims of negligence, recklessness, and/or willful and wanton conduct against both defendants (Counts II and V). Jones also included these state-law theories in her now-dismissed state-court case against defendants. [23-1] ¶¶ 115–203. The Illinois court dismissed these claims with prejudice after concluding that they were barred by interstate sovereign immunity. *See* [27-1] at 2–3; *Franchise Tax Bd. of California v. Hyatt*, 587 U.S. 230, 236 (2019) ("States retain their sovereign immunity from private suits brought in the courts of other States."). Defendants argue that "[b]oth claim preclusion and issue preclusion prohibit Jones from relitigating the Cook Circuit Court's final judgment." [23] at 16.

8

Jones responds that because the state-court dismissal was based on the state court's lack of subject-matter jurisdiction, it is not a "judgment on the merits" and thus lacks preclusive effect. [28] at 12–13.

But the Court identifies another problem. The Illinois statute of limitations for personal-injury torts is two years "after the cause of action accrued." 735 ILCS 5/13-202. The vehicle crash at issue was on December 26, 2021. The instant suit was not filed until October 24, 2024, almost three years later. [1]. The general rule in Illinois is that "the statute of limitations continues to run unless tolling is authorized by a statute," *IPF Recovery Co. v. Illinois Ins. Guar. Fund*, 356 Ill. App. 3d 658, 665 (1st Dist. 2005), and Illinois law disfavors cross-jurisdictional tolling, *see Portwood v. Ford Motor Co.*, 183 Ill. 2d 459, 466 (1998) ("State courts should not be required to entertain stale claims simply because the controlling statute of limitations expired while a federal court considered whether to certify a class action."); *see also id.* ("We refuse to expose the Illinois court system to such forum shopping."). So the fact that Jones filed a timely state-court case does not help her.

Courts generally refrain from sua sponte raising affirmative defenses—like the statute of limitations—but may do so if "the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous." *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 763 (7th Cir. 2016). In this context "frivolous" does not mean "silly or laughable, as the word implies, but simply so clearly blocked by statute, regulation, binding or unquestioned precedent, or some

other authoritative source of law that they can be rejected summarily." *United States v. Bey*, 748 F.3d 774, 776 (7th Cir. 2014).

Jones's tort claims are clearly time-barred from the face of the complaint. More than two years passed between the vehicle crash and the filing of this case, and nothing in the complaint indicates why the two-year limit would not apply. The Court thus dismisses the state-law claims on that basis.

## IV.  Conclusion

For the foregoing reasons, defendants' motion to dismiss [22] is granted and Jones's complaint [18] is dismissed.

Jones already has had the opportunity to amend her complaint. [16], [18]. Because the Court finds that further amendment of her federal claims would be futile, the Court dismisses Counts I, III, and IV with prejudice. *See Knowlton v. City of Wauwatosa*, 119 F.4th 507, 520 (7th Cir. 2024) ("Where a plaintiff repeatedly fails to cure deficiencies, the district court enjoys 'broad discretion' to deny leave to amend."). However, because the Court does not reach the merits of Jones's state-law claims and because Jones relies for those claims on the Court's diversity jurisdiction, *see* 28 U.S.C. § 1332, rather than its supplemental jurisdiction, *see* 28 U.S.C. § 1367, Counts II and V are dismissed without prejudice.

Jones may refile an amended complaint as to Counts II and V if she can cure the timeliness deficiency identified above while still complying with her obligations under Federal Rule of Civil Procedure 11. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015) ("Unless it is certain from the face of the complaint that any amendment would be futile or

10

otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss."). Any amended complaint is due on or before 9/24/25. Failure to file an amended complaint by that date will result in dismissal of this action.

_____
Georgia N. Alexakis
United States District Judge

Date: 9/3/25

11