**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TIRINA JONES,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF HAMMOND and JESSE ESCAMILLA, JR.,<br><br>Defendants. | No. 24 CV 10978<br><br>Judge Georgia N. Alexakis |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tirina Jones was driving in Harvey, Illinois, when a van struck her vehicle and injured her. The van was stolen, and it was being pursued by Jesse Escamilla, Jr., a Hammond, Indiana, police officer. Jones sued Escamilla and the City of Hammond in Illinois court. When the state-court case was dismissed, Jones filed the instant suit in federal court.

Defendants Escamilla and Hammond previously moved to dismiss Jones's first amended complaint, [22], and the Court granted their motion without prejudice to Jones's state law claims and with prejudice to her federal claims, [31]. Jones moved to reconsider, and the Court granted her motion with respect to its prejudicial ruling on her *Monell* claim. [40]. Jones filed a third amended complaint, [41], which defendants now move to dismiss, [57]. For the reasons that follow, the Court grants their motion.

## I. Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). On a motion to dismiss for failure to state a claim, the court accepts as true all of the well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016). That said, the court need not credit legal conclusions or "threadbare recitals" supported by "mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II. Analysis

The Court assumes familiarity with its earlier opinion, which sets out the pertinent factual allegations and state court procedural history. [31] at 2–3. It references those allegations—and any new ones that appear in the third amended complaint—where relevant to the analysis that follows.

### A. State Law Claims

Jones brings state law claims against both Hammond and Escamilla for negligence, recklessness, and willful and wanton conduct. [41] ¶¶ 114–25. Defendants argue that Jones's state law claims cannot survive for three reasons: first, because they are barred by the statute of limitations, second, because they are barred by claim preclusion, and third, because they are barred by sovereign immunity. [58] at 1.

#### 1. Sovereign immunity

The Court begins with the sovereign immunity issue. Jones brings her state-law claims under both diversity and supplemental jurisdiction. [41] ¶¶ 4–5; *see* 28

U.S.C. §§ 1332, 1367. Federal courts hearing state law claims apply the choice of law principles of the state in which they are located—in this case, Illinois. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014).

To determine the state law to apply in tort actions, Illinois courts use the "most significant relationship" test. *Walls v. VRE Chi. Eleven, LLC*, 344 F. Supp. 3d 932, 947 (N.D. Ill. 2018) (citing *Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 503–04 (7th Cir. 1998)). Under that test, "the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties." *Id.* at 947–48. The van collided with Jones's vehicle in Illinois, and the parties do not dispute that Illinois law governs the tort claims. [58] at 15; [67] at 8.

"Under the *Erie* doctrine, 'state rules of immunity govern actions in federal court alleging violations of state law.'" *T.S. v. Cnty. of Cook*, 67 F.4th 884, 890 (7th Cir. 2023) (quoting *Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775, 777 (7th Cir. 1991)). The role of a federal court applying state law is to decide questions of state law as it predicts the state supreme court would decide them. *Id.* Before this Court reaches the merits of Jones's Illinois tort claims, it must ask whether Illinois courts would hear tort claims against an Indiana municipality such as Hammond or a municipal employee such as Escamilla. The answer requires a careful analysis of the immunity Illinois courts provide to Indiana public entities and their employees out of comity and respect for the Indiana Tort Claims Act.[1]

---

[1] Jones argues that the ITCA does not apply because Illinois law, not Indiana law, governs her tort claims. [67] at 8–9. That argument misses the mark: the Court is not applying the ITCA (or Indiana law, more generally) to the merits of Jones's claims but rather assessing

The Indiana Tort Claims Act ("ITCA") establishes guidelines plaintiffs must abide by in order to sue the state of Indiana, its political subdivisions (including municipalities), and their employees. Ind. Code Ann. § 34-13-3; *see Ball v. Jones*, 52 N.E.3d 813, 820 (Ind. App. 2016) (the protections of the ITCA extend to municipal employees). One of the requirements the ITCA imposes is that any such lawsuit must be brought in the courts of Indiana. Ind. Code Ann. § 34-13-3-5(f)(3) (providing that the ITCA must "not be construed as … consent to be sued in any state court beyond the boundaries of Indiana").

Illinois grants immunity to a sister state, its subdivisions, and their employees when the other state enjoys immunity under its own laws that is analogous to the immunity available to Illinois state defendants in Illinois court. *Mermigas v. Higher Educ. Loan Auth.*, No. 24 CV 11505, 2025 WL 2576745, at *4 (N.D. Ill. Sept. 4, 2025). In *Schoeberlein v. Purdue University*, the Illinois Supreme Court adopted a comity approach through which it honors a sister state's immunity from suit when the state of Illinois enjoys similar immunity in its own courts. 544 N.E.2d 283, 288 (Ill. 1989). *Schoeberlein* held that a plaintiff who alleged an injury stemming from a product purchased from Purdue University could not sue Purdue in Illinois courts, because Purdue was an instrumentality of the state of Indiana and because Indiana, like Illinois, limited what remedies litigants could seek and where they could file their

---

whether her claims could be heard in Illinois courts. As explained below, Illinois courts look to Indiana law to determine whether that body of law creates statutory immunity for government entities and their employees, which Illinois then analyzes through the doctrine of comity.

tort claims when suing the state. *Id.* at 284, 286. In particular, the Illinois Supreme Court maintained Purdue's immunity from suit because a provision of the Indiana Code of Civil Procedure provided that "[n]othing contained in this chapter shall be construed … as consent by the State of Indiana or its employees to be sued in any federal court or as consent to be sued in any state court beyond the boundaries of the state of Indiana." *Id.* at 284–85 (quoting Ind. Code Ann. § 34-4-16.5-5(d) (West 1987)).

After *Schoeberlein*, Illinois courts refused to hear suits against instrumentalities of the state of Indiana. In *Grabarczyk v. Chicago and South Shore Railroad*, an Illinois appellate court concluded that if the defendant Northern Indiana Commuter Transportation District was an agency of the state of Indiana, there was no further analysis needed to find that the case against it was properly dismissed under the ITCA and *Schoeberlein*. 664 N.E.2d 145, 210–11 (Ill. App. 1st Dist. 1996). A few years later, in a case against the same defendant, another Illinois appellate court cited *Schoeberlein* for the proposition that Illinois honors Indiana's sovereign immunity reservation because "Illinois, like Indiana, has a statute which provides that the State of Illinois is immune from suit outside of its own courts." *King v. N. Ind. Commuter Transp. Dist.*, 785 N.E.2d 35, 38 (Ill. App. 1st Dist. 2003). The court dismissed the lawsuit for the same reason. *Id.* at 39.

Jones does not successfully distinguish her case from *Schoeberlein*, *Grabarczyk*, or *King*. *See generally* [67], [72]. She first cites *Schoeberlein* in her sur-reply, arguing that because "[t]he Constitution of Illinois provides that 'every person shall find a certain remedy for all injuries and wrongs,'" applying the ITCA to dismiss

her suit contravenes Illinois public policy. *See* [72] at 3 (quoting Ill. Const., 1970, art I, § 12). The *Schoeberlein* court expressly rejected this line of reasoning. 544 N.E.2d at 285–86. That court held that it would not deprive a plaintiff of the opportunity to redress his injury by "honoring Indiana's sovereign immunity statute" and dismissing the suit because the plaintiff could still seek a remedy by bringing his grievance in the proper forum: an Indiana court. *Id.* at 286; *see also King*, 785 N.E.2d 35 at 39 (same). The same goes here. *See* [58-2] at 3 (an Illinois state court determined that Indiana is the proper forum for Jones's claims to be heard).

The ITCA provides protection from certain types of suit to municipalities like Hammond as well as the state of Indiana itself. *See Chariton v. City of Hammond*, 146 N.E.3d 927, 931 (Ind. App. 2020). It applies to any "governmental entity or an employee acting within the scope of the employee's employment." Ind. Code Ann. § 34-13-3-3. The ITCA defines a "governmental entity" as "the state or a political subdivision of the state." *Id.* § 34-6-2.1-77. A city like Hammond is defined as a "political subdivision" for purposes of the ITCA. *Id.* § 34-6-2.1-155. The ITCA thus covers Hammond, even if the sovereign immunity provided by the Eleventh Amendment does not. *See Seay v. City of Indianapolis*, No. 118 CV 00161TWPDLP, 2020 WL 6710799, at *8 (S.D. Ind. Nov. 16, 2020) (citing *Veolia Water Indianapolis, LLC v. Nat'l Trust Ins. Co.*, 3 N.E.3d 1, 5 (Ind. 2014)); *cf.* [67] at 10–11 (arguing that Hammond does not enjoy immunity from suit because it is not protected by the Eleventh Amendment, but not acknowledging that it is protected by the immunity the ITCA provides).

However, whether Illinois courts would honor a municipality's immunity under the ITCA is less clear. The parties do not discuss any case where an Illinois court (or federal court applying Illinois law) applied *Schoeberlein* to a lawsuit against an Indiana municipality or municipal employee under the law of Illinois. *Cf.* [58] at 15–16 (citing *Schoeberlein*, *Grabarczyk*, and *King*, where the defendants were instrumentalities of the state of Indiana rather than municipalities). And while the ITCA encompasses municipalities and their employees, it is not clear that the reasoning of *Schoeberlein* extends to them. To be sure, *Schoeberlein*, *King*, and *Grabarczyk* reference principles of comity and respect for Indiana law. *See*, *e.g.*, *Schoeberlein*, 544 N.E.2d at 285–86; *King*, 785 N.E.2d 35 at 38–39. But the reasoning of *Schoeberlein* and its progeny places emphasis on the fact that Illinois law affords its own state actors immunity from suit in Illinois courts through the Illinois Court of Claims Act. 544 N.E.2d at 285–86. In concluding that plaintiff Schoeberlein could not sue Purdue University under Illinois law, the Illinois Supreme Court emphasized that "[i]n Illinois, as noted above, under the circumstances presented in this case, Illinois could not be sued in the circuit courts of this State." *Schoeberlein*, 544 N.E.2d at 288; *see also Wells v. Vincennes Univ.*, 982 F.2d 1147 (7th Cir. 1992) (applying *Schoeberlein* and holding that a plaintiff must comply with the ITCA when suing an Indiana state university under Illinois law because the plaintiff's remedy would have been "equally limited in both Illinois and Indiana").

Illinois does not create similar immunity for its own municipalities and municipal employees. Although lawsuits against them are subject to certain statutory

limitations, *see* 745 ILCS 10/2-201 et seq., Illinois circuit courts can still hear such actions, *see*, *e.g.*, *Svec v. City of Chicago*, 259 N.E.3d 844 (Ill. App. 1st Dist. 2024); *Agwomoh v. Village of Dolton*, 224 N.E.3d 773 (Ill. App. 1st Dist. 2022). It is therefore not clear whether *Schoeberlein* would protect Indiana municipalities and their employees from defending against any tort lawsuit under Illinois law.

### 2. Issue preclusion

Here, though, an Illinois court has already determined that interstate sovereign immunity does foreclose *this* lawsuit. [58-2] at 3. The Illinois Circuit Court ruled to that effect in November 2024 in a final, appealable order. *Id.*

"A state court judgment is entitled to the same preclusive effect in federal court as that judgment would have in state court." *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 772 (7th Cir. 2013). In Illinois, the doctrine of issue preclusion applies when three factors are met: (1) the issue decided in the prior action is identical to the issue in the current action; (2) the party against whom preclusion is asserted was a party to the prior case; and (3) the prior court issued a final judgment on the merits. *Avanzalia Solar, S.L. v. Goldwind USA, Inc.*, 146 F.4th 553, 564 (7th Cir. 2025) (citing *Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 478 (2001)). The second element is clearly established: Jones was the plaintiff in the state court case and remains the plaintiff here. The first and third elements, though, are both disputed.

Regarding the first element, Jones argues that whether this Court can hear her claims arising under Illinois law is not the same issue as whether an Illinois state court could hear those claims. According to Jones, she "does not dispute that the Circuit Court of Cook County did not have jurisdiction over this matter; it is

impossible to claim that in some way Plaintiff is collaterally attacking that finding upon an adverse judgment." [67] at 13. This assertion is puzzling, because this Court can only hear Illinois state law claims that the state courts of Illinois would find cognizable. "If a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court exercising pendent jurisdiction, standing in the shoes of the state court, must follow the state's jurisdictional determination." *Aarti Hosp., LLC v. City of Grove City*, 350 Fed. Appx. 1, 6 (6th Cir. 2009) (quoting *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 257 (2d Cir. 1991)); *see also Zahn v. N. Am. Power & Gas, LLC,* 815 F.3d 1082, 1087 (7th Cir. 2016) (states "have the power to prevent the federal court from granting relief in a diversity case by denying the substantive right of action asserted" because when a right arises under state law, it is "subject to definition, limitation and, frequently, negation by the state") (citations omitted); *Winkelman v. Cont'l Nursing and Rehab. Ctr., LLC*, No. 20 CV 2480, 2021 WL 5034833, at *2 (N.D. Ill. Feb. 1, 2021) ("[W]hen an Illinois state court lacks subject-matter jurisdiction over a state-law claim, the plaintiff has failed to state a claim for relief in federal court.") (citing *Zahn*, 815 F.3d at 1087); *Glemser v. Sugar Creek Realty, LLC*, No. 09 CV 3321, 2010 WL 375166, at *3 (C.D. Ill. Jan. 26, 2010) ("This Court cannot entertain state claims that could not have been heard in the state court."). The question of whether Jones's claim would be viable in state court, then, is exactly the same issue this Court must decide. The first element of issue preclusion is satisfied here.

The parties also dispute whether the state court's judgment that it could not hear Jones's case against Hammond and Escamilla is a final decision on the merits. The Circuit Court dismissed the case for lack of jurisdiction, *see* [58-2] at 3, but that ruling still has preclusive effect despite not being a final decision on the merits.[2] "The common law of Illinois establishes that, where the question of jurisdiction, whether it be jurisdiction of the subject matter or of the parties, has been raised and decided, the adjudication of the issue precludes the raising of the question again." *Moore v. Ill. Pollution Control Bd.*, 561 N.E.2d 170, 177 (Ill. App. 5th Dist. 1990); *see also Word Seed Church v. Vill. of Hazel Crest*, 111 F.4th 814 (7th Cir. 2024) (jurisdictional decisions are also precluded from re-litigation under federal law).

Here, the question of jurisdiction was actually raised and decided. [58-2] at 1–2. The Circuit Court of Cook County discussed the arguments raised by both sides on the issue: defendants argued that the Illinois court lacked jurisdiction according to principles of sovereign immunity, and Jones responded that defendants had waived the argument by failing to raise it in the first two years of litigation and that sovereign immunity "is not absolute, but is available only if the forum state decides to respect the dignity of the defendant state." *Id.* at 2. The merits of those arguments are immaterial; what matters now is that the litigants presented their support for

[2] Sovereign immunity is considered a jurisdictional issue under Illinois law. *See Lavery v. Dep't of Fin. and Prof. Reg.*, 279 N.E.3d 664, 684 ¶ 79 (Ill. 2025) ("Absent an express statutory waiver of sovereign immunity in the statute authorizing awards for attorney fees and/or costs, the circuit court lacks subject-matter jurisdiction to enter a judgment against the State for attorney fees and/or costs."); *Leetaru v. Bd. of Trs. of Univ. of Ill.*, 32 N.E.3d 583, 594 ¶ 42 (Ill. 2015) ("Defendants' jurisdictional challenge is premised on principles of sovereign immunity."); *Giovenco-Pappas v. Berauer*, 179 N.E.3d 815, 824 ¶ 47 (Ill. App. 1st Dist. 2020) (sovereign immunity is a subject-matter jurisdictional question).

their respective positions in state court, and the court made a jurisdictional ruling after considering their arguments. "'Actually litigated' does not mean 'thoroughly litigated,' but it does mean 'that the parties disputed the issue and the trier of fact resolved it.'" *In re Nikitas*, 326 B.R. 127, 131 (Bankr. N.D. Ill. 2005) (quoting *Taylor v. Peoples Gas Light & Coke Co.*, 656 N.E.2d 134, 141 (1st Dist. 1995)).

In short, Jones's ability to bring Illinois state law claims against Hammond and Escamilla was actually litigated in Illinois court. That court issued a final judgment concluding that it lacked jurisdiction to hear those claims. The question of whether Jones has jurisdiction to bring her claims under Illinois law is subject to the doctrine of issue preclusion; this Court cannot revisit the issue. Because the Court dismisses the claims based on issue preclusion, it does not reach the parties' arguments regarding the statute of limitations.

### B. *Monell* Claim

Count III is a *Monell* claim against the City of Hammond, asserting that its police department maintains an unconstitutional policy or practice that resulted in Jones's injuries under 42 U.S.C. § 1983. [41] ¶¶ 126–37; *see Monell v. Dept. of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–91 (1978). Jones alleges facts in her third amended complaint indicating that Escamilla's pursuit of the van that struck her was aligned with a Hammond police department policy of pursuing stolen vehicles at dangerous speeds, and doing so across state lines where Indiana police lack authority. [41] ¶¶ 128–36. But Jones has not plausibly alleged that her injuries were caused by violation of her constitutional rights. That is fatal to her *Monell* claim.

A plaintiff's *Monell* claim against a city can move past the pleading stage "only if her allegations plausibly assert that the city itself caused a constitutional violation." *Flores v. City of S. Bend*, 997 F.3d 725, 731 (7th Cir. 2021). Defendants argue that because the Court previously dismissed Jones's § 1983 claim against Escamilla with prejudice, Jones cannot bring a *Monell* claim against Hammond based on her injuries stemming from the same incident. [58] at 22; [68] at 5–8. Jones argues in turn that her *Monell* claim is not dependent on a constitutional violation having been committed by Escamilla. [67] at 13–14.

Jones is correct that "a municipality can be held liable under *Monell,* even when its officers are not, unless such a finding would create an inconsistent verdict." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) (emphasis removed). But the basis for a viable § 1983 claim is the violation of the plaintiff's constitutional rights. *Id.* at 306. The conduct Jones alleges violated her constitutional rights is that Escamilla, in accordance with Hammond policy, engaged in a high-speed chase of a stolen vehicle across state lines, resulting in the accident that injured her. Jones states that her claim is based on Hammond's "custom, policy, and/or practice in permitting its officers to repeatedly engage in high-speed chases and for the City's failure to adequately train its officers to not engage in the enforcement of Illinois laws by high speed pursuits of Illinois vehicles in a reckless and indifferent manner." [41] at 14. If Escamilla's high-speed chase of the van across the Indiana–Illinois border did not violate the federal Constitution, as this Court previously held,

*see* [31] at 5–8, there is no avenue by which Jones's constitutional rights were violated by the Hammond policy authorizing that same chase.

The facts Jones alleges are distinct from the scenario in *Cazares v. Frugoli*, No. 13 CV 5626, 2014 WL 996508 (N.D. Ill. Mar. 11, 2014). In *Cazares*, the plaintiffs sued the City of Chicago police on a *Monell* theory that Chicago's policies did not sufficiently address the repeated drunk driving of an officer who, while intoxicated, struck and killed the plaintiffs' decedents with his vehicle. *Id.* at *1. *Cazares* held that the plaintiffs had plausibly alleged an unconstitutional policy or practice that had injured them "[b]y pleading specific accounts of incidents in which the City failed to take any action whatsoever after learning that one of its police officers had been involved in automobile accidents involving intoxication." *Id.* at *4. In other words, the alleged municipal policy of inaction in response to reports of drunk driving was distinct from the officer's drunk driving itself. *Id.* at *3–4.

Here, though, the high-speed car chase across state lines that led to Jones's injury is a direct manifestation of the alleged policy that Jones has challenged. If the car chase itself did not violate Jones's constitutional rights, Hammond's policy authorizing it also did not. This case is more akin to *Flynn v. Consolidated City of Indianapolis and Marion County*, 148 F.4th 565 (7th Cir. 2025), than *Cazares*. In *Flynn*, the Seventh Circuit found that where a police officer in hot pursuit of a fleeing suspect did not violate the constitutional rights of the victim whose vehicle was struck by the suspect's, there could be no attendant *Monell* liability based on the city's failure to train the officer. 148 F.4th at 570; *see also Lyons v. City of Chicago*, No. 20 CV

03412, 2023 WL 2390364, at *4 (N.D. Ill. Mar. 7, 2023) ("*Thomas* created a *narrow* exception to the rule that municipal liability is contingent on officer liability. *Thomas* only applies when the *Monell* claim is 'factually distinct' from the claims against the individual officers.") (quoting *Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015)) (emphasis original).

The key question is whether Jones has plausibly alleged that the high speed chase resulting in her injuries was a violation of her constitutional rights. "In general, the standard for determining whether a government official violates someone's Fourteenth Amendment substantive due process rights is whether the violation shocks the conscience." *Flynn*, 148 F.4th at 568 (citation omitted). "In the emergency context of a sudden, high-speed police chase resulting in officer-caused death, the standard is intent to harm." *Id.* In its opinion granting defendants' motion to dismiss Jones's first amended complaint, this Court discussed why Jones's injuries stemming from Escamilla's pursuit did not plausibly allege a constitutional violation based on Escamilla's driving at high speeds and disregarding traffic laws and traffic control signals. The Court explained:

> Escamilla was in an "emergency situation": active pursuit of a fleeing suspect. Like the officer in *Flynn*, Escamilla had even more justification for the pursuit than the emergency in *Lewis*, since he had reason to believe that the driver was in a stolen vehicle. "In the emergency context of a sudden, high-speed police chase the standard is intent to harm." *Flynn*, [148 F.4th at 568] (citing [*Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 854 (1998)]). Jones does not allege any intent to harm, and her situation thus "does not give rise to liability under the Fourteenth Amendment, redressable by an action under § 1983." *Lewis*, 523 U.S. at 854.

[31] at 8 (cleaned up). That logic still applies to Jones's allegations in her third amended complaint. The facts pleaded indicate that Escamilla was pursuing a stolen vehicle—an emergency situation—and do not permit the inference that Escamilla harbored an intent to harm. *See generally* [41]. Jones has not alleged any additional facts raising the inference that the scenario was not a true emergency. *Id.*; *cf. Flores*, 997 F.3d at 730 (a routine traffic stop being handled by five other officers did not constitute an emergency).

When it reconsidered its decision to grant defendants' earlier motion to dismiss, this Court acknowledged that in her first amended complaint, Jones had hinted at an alternative theory of *Monell* liability: "a theory that the Indiana city of Hammond and its police officers have a pattern and practice of engaging in the enforcement of laws in the State of Illinois without legal authority." [40] at 2 (cleaned up). Jones's third amended complaint emphasizes that theory. She alleges that "Indiana law enforcement communities that border Illinois were prohibited from crossing into Illinois laws [sic] to enforce laws." [41] ¶¶ 109; *see also id.* ¶ 110–11, 132, 135–36. And although she does not cite a particular statutory provision, she identifies the source of this prohibition as Illinois law. *Id.* ¶ 108.

"But a violation of state law does not violate the federal constitution." *Nigl v. Jess*, 853 Fed. Appx. 6, 10 (7th Cir. 2021). Even accepting Jones's allegation that Illinois state law does not allow Indiana police officers to enter Illinois in order to enforce the law, it does not follow that Escamilla's conduct in chasing the stolen van ran afoul of her federal constitutional rights. In *Pasiewicz v. Lake County Forest*

*Preserve District*, forest preserve police officers arrested the plaintiff outside of their proscribed boundaries, which the plaintiff argued Illinois law prohibited unless the officers were aiding the regular police force. 270 F.3d 520, 526 (7th Cir. 2001). The Seventh Circuit declined to reach the question of whether the police officers had violated state law, reasoning that "[i]t would not violate the Fourth Amendment for the Illinois Legislature to empower preserve officers to make arrests outside the district's physical boundaries. It is difficult to see why an officer engaging in the same underlying act necessarily would." *Id. Pasiewicz* stands for the proposition that the Court need not determine whether Illinois law authorized Escamilla's pursuit to decide whether Jones has alleged a federal constitutional wrong. *See id.*

In her briefs, Jones does not discuss *Pasiewicz*, let alone distinguish it. *See generally* [67], [72]. In fact, she does not discuss at all her theory of *Monell* liability premised on Indiana police's wrongly enforcing law in Illinois. *Id.* This omission is a glaring one because Jones's allegations concerning this theory were one reason the Court granted Jones's earlier motion for reconsideration. [40] at 2. In addition, in so doing, the Court expressly invited Jones to explain how a policy permitting Hammond or its police officers to enforce laws in Illinois without legal authority can amount to a constitutional tort cognizable under § 1983. *Id.* Jones has thus waived the argument. Courts are not responsible for researching and constructing a litigant's argument on her behalf. *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011); *see also Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir.

2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

Because Jones has failed to allege an injury stemming from a constitutional violation, her § 1983 *Monell* claim cannot proceed.

## III. Conclusion

For the reasons stated, the Court grants defendants' motion to dismiss Jones's third amended complaint. [57]. Jones already has had multiple opportunities to amend her complaint, [16], [30], [39], and further amendment would be futile. The Court therefore dismisses Jones's complaint without leave to amend. *Knowlton v. City of Wauwatosa*, 119 F.4th 507, 520 (7th Cir. 2024) ("Where a plaintiff repeatedly fails to cure deficiencies, the district court enjoys 'broad discretion' to deny leave to amend.") (citation omitted); *see also Esco v. City of Chicago*, 107 F.4th 673, 683 (7th Cir. 2024) ("District courts have broad discretion to deny leave to amend the pleadings where the amendment would be futile."). The Clerk is directed to enter judgment in favor of defendants Escamilla and the City of Hammond and against plaintiff. Civil case terminated.

ENTER:

Georgia N. Alexakis
United States District Judge

Date: 11/12/2026